Nicholson, C. J.,
delivered the opinion of the Court.
This is an action of ejectment, commenced on the *721 17th of May, 1860, by Orville A. Nixon,' Margaret C. Williams, and Pavatt Williams, against James Fowler, for the recovery of a tract of land of 2,000 acres, situated in Humphreys county.
The plaintiffs in the suit had a verdict and judgment, from which the defendant has appealed. The plaintiffs claim title under a grant issued by the State of Tennessee, on the 7th of December, 1838, to John B. Groves, assignee of Cordelia Nixon, for 2,000 acres, which grant issued upon an entry dated October 31st, 1831; number of entry 507, and bounded as follows: Lying in Humphreys county, on the south' side of Duck River, beginning at the mouth of said river, running up Tennessee River 160 poles, to a large Spanish oak, the beginning corner of C. Nixon’s 5,000 acre survey, bearing date October 13th, 1838; thence east with the W. B. line of said survey 900 poles to a chestnut oak, the N. E. corner of said survey; thence north 900 poles to the bank of Duck River; thence down said river with its meanders to the beginning, including and excluding 1,000 acres of land held by prior claim.
The plaintiffs next rely for their title upon' a decree of the Chancery Court at Waverly in the case of O. A. Nixon and others v. G. W. Carpenter and others, rendered on the 22d of March, 1860. The following are the recitals of this decree: “It appearing to the Court, that on the 31st of October, 1831, an entry was made in the entry-taker’s office of Hum-phreys county, No. 507, for 2,000 acres of land, in the name of Cordelia M. Nixon, a minor, and that *722 the said Cordelia M. died before she was twenty-one years old; and afterwards, on the 27th of December, 1838, a grant was issued to John B. Groves as as-signee of Cordelia Nixon; and it further appearing that the said John B. Groves sold and assigned said land by deed to G. W; Carpenter, and that the same was done by collusion and fraud between the said Groves and Carpenter, and with the view to deprive the said heirs of the said Cordelia M. of said land, the Court being of opinion that the said Cordelia had no power to assign said entry to said Groves; that the same enured to the benefit of the said Cordelia M. and her heirs; and it further appearing that said Cordelia M. departed this life intestate before arriving at the age of twenty-one years, and without issue living as her heirs at law,” certain persons, of whom plaintiffs are the only survivors, The Court then decreed that all the right, title, interest and claim, that the heirs of John B. Groves and G. W. Carpenter have in and to entry No. 507, and the land described in the grant thereon, bounded as already described, be divested out of them and vested in the said Orville A. Nixon, Margaret C. Williams and Pavatt Williams, and their heirs and assigns forever.
It is obvious that as between the parties to the suit in which this decree was made, the same is conclusive, and fixes the legal title to the land in dispute in the plaintiffs, but as the defendant was no party to that suit, he is not precluded from assailing and contesting the title so acquired. It is objected by the defendant that the grant is void on its face because *723 of its vagueness — the prior claim of 1,000 acres therein included and excluded not being described by metes and bounds.
In the case of Bowman v. Bowman, 3 Head, 47, this Court recognized the validity of a grant which included within its exterior boundaries other lands previously surveyed, and which on the face of the grant were excluded in these words: “ Plotting out the lands previously surveyed, represented to me by the aforesaid Cornelius Bowman to be 4,000 acres.” In that case the Court held that “the question is one exclusively between the State and the grantee, with which a mere trespasser or subsequent enterer has nothing to do, and if the State acquiesces and allows the grant to stand, there can be no question but that in a court of law it must be regarded as investing the grantee with a legal title to all the land included by its boundaries not shown to be held by a superior title.”
It is next insisted that the grant is void because the proof shows that the beginning and second corner and the west line, as well as the east line, calling for the meanders of Duck River, .are all on previously granted lands.
The grant calls for the mouth of Duck River as the beginning, and for the Tennessee River as the west boundary, and for Duck River as the east boundary.
Upon the same ground upon which it was held in Bowman v. Bowman, 3 Head, 47, that a grant might include lands previously granted, and that the grant can not be attacked for such cause in a court of law, *724 it must be held that in the present case defendant can not attack the grant because the corners and boundaries are on previously granted lands.
The grant can be operative only as to lands in-eluded within its boundaries not previously entered or granted, and th^ fact that the boundaries are on lands already granted, can not make it void except so far as it embraces granted or entered lands: nor is the validity of the grant affected by the proof, that no marked lines or other corners than the Spanish oak or the Tennessee River were found; in other words, by the fact that the grant was never actually surveyed.
In Smith v. Buchanan, Cooper’s Tenn. Rep., 665, Judge White said: “It is not, in my opinion, of the essence of a grant that an- actual survey should have preceded it. Though no survey was ever in fact made, if the land be so described in the grant that it can be identified and its boundaries ascertained, it ought to hold the land.” No difficulty can arise in identifying the land described in the grant under consideration. One of its boundaries is the Tennessee River, and another is the Duck River — two objects which clearly fix the locality of' the lands.
Nor can the defendant object to the grant because it contains 15,000 acres instead of 2,000 acres. The law is well settled, that a natural object, such as a river, will control a call for distance. Hence, when the third line calls to run 900 poles to Duck River, the line must be extended to Duck River, even though in so doing much more land is embraced than the *725 grant calls for. The grantee is entitled to all the land embraced in the boundaries of the grant, and none but the State can complain. Meigs’s R., 217.
It was said in Curle v. Barrel, 2 Sneed, 66, that in a collateral proceeding, not between the parties to the grant, the grant being matter of record, can not in general be impeached and declared void except by some matter of record, evidence of the same grade as the grant itself, or by facts apparent on the face of the grant. 1 Sneed, 134; 4 Hum., 203.
It is next objected that it is not satisfactorily shown that such a person as Cordelia M. Nixon ever had an existence, and if not, then plaintiffs could not have any title as her heirs. It is said that we arc to presume that the entry was in the name of Cordelia Nixon, the mother, and not in that of Cordelia M. Nixon, the daughter, and therefore that the decree vesting the title in plaintiffs as the heirs of Cordelia M. is inoperative and void.
It is not true, as assumed in the argument, that the grant recites that the entry was in the name of Cordelia.1 It is said in the grant that John B. Groves was the assignee of Cordelia Nixon; but it is not said that she was the enterer of the land. On the contrary, it is recited in the decree that the. entry was in the name of Cordelia M., the daughter,, and that the assignment was by Cordelia, the mother.
Although there is no direct or positive evidence of the existence of Cordelia M. by any witness who remembers ever to have seen her, yet there is positive proof that she did exist and died at an early age, *726 and this is fully sustained by evidence of representation. We think there is no ground to doubt that Cordelia M. was the enterer of the land, and that the plaintiffs are her only surviving heirs, and as such entitled to the land as vested in them by the decree.
We are, therefore, of the opinion that plaintiffs were entitled to all the land included within the boundaries of the grant, except so much as was held by prior entries or grants, unless, defendant has succeeded in showing either that his own title was better, or that there were better titles outstanding in others, or that he is protected in his inferior title by the statute of limitations.
The defendant introduced evidence which showed that there were three tracts within the boundaries of the grant, held by outstanding titles, superior to that of plaintiffs, and as to these the jury found against the plaintiffs. As to two others the preponderance of proof was that they were held by. superior titles, and were inside of the plaintiffs’ boundaries; but as to these two the jury found for plaintiffs. One of these was a grant of fifty acres to James Wyly, and the other a grant of fifty acres to Wm. C. Conrad. Neither plaintiffs nor defendant claim title to either of these tracts, but it was error in the jury to find for plaintiffs as to these; but as plaintiffs have proposed to waive any claim to these two tracts, the error is not material and the judgment may be corrected here.
Defendant sets up title to these tracts, his title to all which is inferior to that of plaintiffs; but these three tracts lap upon each other at one point, and at this *727 point defendant is shown to have improvements which include portions of all three of the tracts. He claims title to all three of the tracts by an adverse possession of more than seven years.
In trying to establish a continuous seven years adverse possession, he offered to read a contract of lease between S. H. Fowler, the ancestor of defendant, and Woody Reams, dated March 9, 1853. Plaintiffs objected to the reading of the lease on account of its vagueness, which objection was sustained. Upon looking at the lease we find that it is so indefinite and vague as to the land leased, that of itself it would have been immaterial and irrelevant. But it would have been competent for the defendant to show by parol proof that Reams occupied the land under this lease, and that it was part of the land included within plaintiffs’ grant. It might have been material for the defendant to fix by this lease the beginning of Reams’s tenancy, and by showing seven years continuous adverse possession he' might have defeated plaintiffs’ action.
The lease was dated March 9, 1853, and the suit was commenced May 17, 1860.
If defendant had offered proof to show that Reams held possession under' the lease, the rejection of the lease would have been a material error. But the only fact which would have been proved by the lease was proven by other testimony; that is, the time when Reams took possession as Fowler’s tenant. Gwin, who had a grant for one of the tracts, and who conveyed to Fowler, proves that he sued Fowler in 1853, *728 and ejected him from the land in 1854, and that Reams was in possession when he sued, and that when he gained his suit in 1854, Reams was in possession and the Sheriff put him out of possession, and he conveyed the land to Eowler, which conveyance was on the 3d of October, 1854. Here was a chasm in the possession of Fowler from October, 1854.
This fact, together with the failure of defendant to show that his adverse possession was unbroken and continuous, was fairly submitted to the jury, and they determined that the defendant had failed to make good his defense of the statute of limitations. We are unable to see that the reading of the lease would or could have produced a different result. We are therefore of opinion that the rejection of the lease was not such error as requires us to reverse the judgment.
It is next insisted that the Court erred in rejecting a deed executed by O. A. Nixon, one of the plaintiffs, to Byrne & Fowlkes for one thousand acres of the land in controversy, and also in rejecting the evidence of a witness, Ship, who was introduced to prove declarations of Nixon tending to show that his conveyance to Byrne & Fowlkes was champértous.
This conveyance was made by Nixon to Byrne & Fowlkes after the institution of the suit. They therefore took the title subject to the result of the suit. It was not an outstanding title adverse to that of plaintiffs’, but a harmony and privity with it. The suit after the conveyance was continued in the name of Nixon, but in recovery would enure to the benefit of Byrne *729 & Fowlkes. But if it be concluded that the witness, Ship, would have proved that there was champerty in the conveyance, still the simple result would have been that the conveyance was void and no title passed out of Nixon into Byrne & Fowlkes. In that case Nixon could have proceeded to prosecute the suit in his own name, as if no conveyance had been made.
In Wilson v. Nance, 11 Hum., 190, it was held that “it was well settled that when the conveyance is void for champerty, the title remains in the grantor, so as to enable him to maintain an action upon it, and the void deed can not be set up by a third person to the prejudice of his title. 4 Kent, 448; 5 John. R., 489; 6 Mass. R., 418. It is clear, therefore, that there was no error, in. rejecting the deed or in excluding the evidence of Ship.
It is next insisted that as to one of the tracts of land included within the boundaries of plaintiffs’ grant, although the grant was issued subsequently to that of plaintiffs, yet it gives the superior title, because defendant has proved the entry, which was dated prior to plaintiffs’ grant. It is true that plaintiffs have not produced their entry, but in the grant it is recited as having been dated October 31, 1831, and in the decree of the Chancery Court it is recited as appearing to the Court that on the 31st of October, 1831, an entry was made, etc., No. 507, for two thousand acres in the name of Cordelia M. Nixon. This judicial recognition of the entry as the foundation of the title of plaintiff to the land in controversy furnishes at least prima facie evidence that it was a valid special entry.
*730 But, however this may be, the entry brought forward by defendant to support the grant to Wood, although dated in 1832, can not be relied on as overreaching the grant to plaintiffs, for the reason that it is not a special entry and is not pursued in the grant issued thereon in 1850. The entry is as follows: “ George W. Erwin enters five thousand acres of land in said county, beginning on the south boundary line of a tract of land entered in the name of Andrew Erwin, Jr., for five thousand acres, and to begin at a white oak and run south and west and north and east to the beginning, so as to make five thousand acres, omitting out old claims, if any, until the quantity made.” This has none of the requisites of a special entry, so as to enable the grant to relate back to it.
The last objection which -we deem it necessary to notice, is that the judgment is void for vagueness and uncertainty. The verdict of the jury is specific in finding as to the several tracts, designating them by their numbers as laid down on the plat which is made part of the record with the number of the grants and the number of acres in each, that they constitute outstanding titles superior to the title of plaintiffs, as to which they find for defendant, and as to all the balance they find in favor of defendants and that they are the owners in fee thereof.
This finding is sufficiently certain and definite to render a judgment thereon. Upon this finding it was ordered by the Court'that the plaintiffs recover of the defendants all the land described in the declaration except *731 the three tracts aforesaid described as aforesaid, etc. We see no difficulty in issuing a writ of possession upon this judgment. It is only necessary to conform to the finding of the jury, which is definite and specific as to the tracts not to be embraced in the writ of possession. As the plaintiffs have disclaimed any claim to the two tracts of fifty acres each granted to Wyly and Conrad, they too will be excluded from the writ of possession, and in that respect the judgment here will be rendered.
With this modification of the judgment the same is affirmed.